**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISON**

| | | |
|---|---|---|
| EDNA LOPEZ, | ) | CASE NO. 1:20-CV-00575-DCN |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD C. NUGENT |
| | ) | UNITED STATES DISTRICT JUDGE |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| COMMISSIONER OF SOCIAL SECURITY, | ) | CARMEN E. HENDERSON |
| | ) | |
| Defendant, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

### I. Introduction

Plaintiff, Edna Lopez ("Lopez" or "Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits ("DIB"). This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). For the reasons set forth below, it is recommended that the Court REVERSE the Commissioner of Social Security's nondisability finding and REMAND this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

### II. Procedural History

On March 12, 2018, Claimant filed an application for DIB, alleging a disability onset date of November 30, 2015. (ECF No. 11, PageID #: 270). The application was denied initially and upon reconsideration, and Claimant requested a hearing before an administrative law judge ("ALJ").  (ECF No. 11, PageID #: 234).  On August 7, 2019, an ALJ held a hearing, during which Claimant, represented by counsel, and an impartial vocational expert testified.  (ECF No.

11, PageID #: 154).  On August 26, 2019, the ALJ issued a written decision finding Claimant

was not disabled.  (ECF No. 11, PageID #: 60). The ALJ's decision became final on January 27,

2020, when the Appeals Council declined further review.  (ECF No. 11, PageID #: 46).

On March 17, 2020, Claimant filed her Complaint to challenge the Commissioner's final

decision.  (ECF No. 1.)  The parties have completed briefing in this case. (ECF Nos. 15 and 16).

Claimant asserts the following assignment of error:

> At step four, the ALJ found that Ms. Lopez is capable of
> performing her past job as a customer service representative. This
> finding is unsupported by substantial evidence when the limitations
> resulting from Ms. Lopez' [sic] severe bilateral hand impairments
> preclude her from performing the duties required of this job.

(ECF No. 15 at 1).

## III. Background

### A.  Relevant Hearing Testimony

#### 1.  Claimant's Testimony[1]

Prior to Claimant's application for DIB, she had been employed as a senior advocate for

customer service in a call center for 12 years and 8 months. (ECF No. 11, PageID #: 163-164).

Her job required regular and quick typing. (ECF No. 11, PageID #: 168-169). During the

hearing, Claimant testified that she would be unable to perform her job anymore because of

tendonitis in her dominant left hand and that she is not able to use her right hand to type at all

due to a congenital defect. (ECF No. 11, PageID #: 167). Claimant testified that she has tried

various treatments for her left-hand tendonitis including physical therapy, but nothing has

helped. Claimant testified that she is unable to make a fist or type and experiences pain and

---

[1] The Court has included only the testimony relevant to Claimant's upper body
limitations since Claimant has only alleged error with respect to these impairments.

stiffness in her fingers. (ECF No. 11, PageID #: 168, 176). Claimant attempted to alleviate her symptoms by using warm water, squeezing putty, at-home exercises, and trying to put puzzles together. (ECF No. 11, PageID #: 169, 171, 174, 176). Claimant testified that she tried to clean her house, but that it took her twice as long and she needed to take breaks every twenty minutes. (ECF No. 11, PageID #: 177). She testified that she attempted to cook but not often as she cannot perform certain functions such as chopping vegetables. (ECF No. 11, PageID #: 172).

### 2. Vocational Expert Testimony

Vocational expert, Kathleen Rice, also testified. The ALJ posed the following hypothetical:

> assume a hypothetical individual of the claimant's age and education and with the past job that you described. Further assume this individual is limited as follows. This is a light exertional hypothetical with the following additional limitations. This person can frequently operate hand controls with the right hand. This person can frequently handle and finger with the right hand. This person can only occasionally climb ramps and stamps; never ladders, ropes, or scaffolds; can frequently balance, stoop, kneel, and crouch; and only occasionally crawl. This person can never work unprotected heights or near dangerous moving machinery and cannot engage in commercial driving. Can this hypothetical individual perform the past job that Ms. Lopez performed?

(ECF No. 11, PageID #: 187-188). The vocational expert testified that past work could be performed. (ECF No. 11, PageID #: 188). In a second hypothetical, the ALJ also limited the individual to frequent use of hand controls with the left hand and frequent fingering and handling with the left hand. (ECF No. 11, PageID #: 188). The vocational expert testified that past work could still be performed. (ECF No. 11, PageID #: 188). For the third hypothetical, the ALJ included the limitation in the first hypothetical but further limited the individual to sedentary exertion level. (ECF No. 11, PageID #: 188-189). The vocational expert testified that past work could be performed. (ECF No. 11, PageID #: 189). The individual could also perform past work

if the second hypothetical individual was likewise limited to sedentary work. (ECF No. 11, PageID #: 189).

Claimant's attorney then questioned the vocational expert. Claimant's attorney asked the vocational expert whether jobs would exist for the hypothetical person in the first four hypotheticals if the individual was further limited to no handling, finger, or feeling with the right upper extremity and only occasional handling and fingering with the left upper extremity. (ECF No. 11, PageID #: 191). The vocational expert testified there would be no jobs available with those limitations. (ECF No. 11, PageID #: 191). Claimant's attorney then asked whether jobs would be available for an individual (from hypotheticals 1-4) who was further limited to only occasional handling, fingering, and feeling with both upper extremities. (ECF No. 11, PageID #: 191). The vocational expert testified that only one job would be available with those limitations. (ECF No. 11, PageID #: 191-92).

### B. Relevant Medical Evidence

Claimant treated with Elva E. Thompson, CNP on December 21, 2016, where an examination of her left hand revealed tenderness in the left wrist. (ECF No. 11, PageID #: 490). Her left third finger was flexed at the MIP. There was mild edema. The assessment was trigger middle finger of the left hand, carpal tunnel of the left wrist, anxiety, depression and unspecified insomnia. (ECF No. 11, PageID #: 491).

Claimant treated with Stephen L. Cheng, M.D. at the Department of Orthopedics on January 13, 2017. (ECF No. 11, PageID #: 487). Claimant reported moderate pain in her left hand with grasping. (ECF No. 11, PageID #: 487). Dr. Cheng noted that Claimant had a birth defect of her right arm – it was shorter than her left arm and did not function well. (ECF No. 11, PageID #: 488). An examination of Claimant's left hand revealed limited range of motion in

4

three of her fingers and diffuse tenderness in the hand. (ECF No. 11, PageID #: 489). Dr. Cheng assessed Claimant with left hand tendonitis and trigger finger of the ulnar three digits. (ECF No. 11, PageID #: 489). Dr. Cheng referred Claimant to occupational therapy. (ECF No. 11, PageID #: 488).

Claimant underwent an initial occupational therapy evaluation that same day. (ECF No. 11, PageID #: 485).  It was noted that Claimant had mild diffuse edema of her left hand; the third through fifth digit was in a flexed position. Improvement was noted following fluidotherapy. (ECF No. 11, PageID #: 486).

Claimant returned to Dr. Cheng on January 27, 2017. (ECF No. 11, PageID #: 471). Dr. Cheng noted that an x-ray of Claimant's left hand taken on December 14, 2016 revealed mild diffuse osteoarthritis. (ECF No. 11, PageID #: 472). Dr. Cheng again noted diffuse tenderness and limited range of motion. (ECF No. 11, PageID #: 472). In a follow-up visit with Dr. Cheng on February 3, 2017, Claimant was given an injection in her left middle finger. (ECF No. 11, PageID #: 465). During a visit on February 17, 2017, Dr. Cheng noted limitation of flexion and extension in the ulnar three fingers of Claimant's left hand with diffuse tenderness. (ECF No. 11, PageID #: 453).

Claimant returned to her neurologist, Dr. Hanna, on February 17, 2017. (ECF No. 11, PageID #: 449). Although Claimant treated with Dr. Hanna for her epilepsy, Dr. Hanna also performed a physical examination of Claimant and noted paresis in the right upper extremity; coordination slowed on the right; and her gait was noted to have right paresis. (ECF No. 11, PageID #: 451).

Claimant continued with occupational therapy for her left hand and on April 3, 2017, she was seen for her eighteenth visit. (ECF No. 11, PageID #: 425). She reported no pain in her left

hand but remaining stiffness. (ECF No. 11, PageID #: 426). It was noted that Claimant was "no longer guarding with her [left upper extremity] and using [her] [left upper extremity] spontaneously for all [activities of daily living].  (ECF No. 11, PageID #: 427). Claimant was found to have reached maximum benefit from occupational therapy. (ECF No. 11, PageID #: 427).  It was expected that she should continue to improve working on her own. (ECF No. 11, PageID #: 427).

Claimant followed-up with Dr. Hanna on February 23, 2018. (ECF No. 11, PageID #: 395). Dr. Hanna's examination found right arm paresis, decreased right hand coordination and a right paretic gait. (ECF No. 11, PageID #: 397-398).

On March 7, 2018, Claimant treated with her primary care physician Rebecca L. Schroeder, M.D. (ECF No. 11, PageID #: 393). Dr. Schroeder noted continued left hand weakness and poor grip strength. (ECF No. 11, PageID #: 394). Dr. Schroeder referred Claimant to occupational therapy due to calcific tendonitis of her left hand. (ECF No. 11, PageID #: 395).

Claimant again presented at occupational therapy on April 2, 2018. (ECF No. 11, PageID #: 613).  Claimant hoped to increase the function of her left hand and decrease the pain. (ECF No. 11, PageID #: 614). The assessment noted proximal interphalangeal flexion contractures in Claimant's middle, ring, and pinky finger; limited composite flexion of the same fingers; and limited wrist flexion. (ECF No. 11, PageID #: 615).

Claimant treated with Dr. Schroeder on September 7, 2018. Active problems included epilepsy, anxiety, depression, carpal tunnel syndrome of the left wrist, cerebral palsy, stiffness of the left hand, stiffness and pain in the left hand, and plantar fibromatosis of the left foot. (ECF No. 11, PageID #: 645). Claimant followed-up with Dr. Schroeder on October 19, 2018. An examination noted congenital right arm weakness. Fine finger movements were intact with the

left greater than the right. (ECF No. 11, Page ID #: 670).

On January 10, 2019, Claimant consulted with Ann Harrington, APRN-CNS on for a disability exam/functional capacity exam. (ECF No. 11, Page ID #: 750). Nurse Harrington noted that Claimant was able to lift eight pounds maximum with the right and left hands. (ECF No. 11, Page ID #: 755). She was able to sit for 30 minutes; stand for 30 to 45 minutes; and walk for one hour. It was Nurse Harrington's impression that Claimant had left hand pain with a normal x-ray from 2016 and congenital right upper extremity paresis and short length. (ECF No. 11, Page ID #: 755).

Claimant had an office visit with Dr. Schroeder on January 11, 2019. (ECF No. 11, Page ID #: 760). Dr. Schroeder noted carpal tunnel syndrome of left wrist, calcific tendonitis of the medial three fingers on the left hand, stiffness of left hand, and right arm weakness. (ECF No. 11, Page ID #: 760-761).

### C.  Opinion Evidence

#### 1.  Dr. Jim Bircher – Consultative Physical Examination

Claimant underwent a consultative physical examination on June 2, 2018 conducted by Dr. Jim Bircher. (ECF No. 11, Page ID #: 574). Dr. Bircher noted Clamant was left hand dominant. (ECF No. 11, Page ID #: 574). An examination found rhizomelia of the right arm. (ECF No. 11, Page ID #: 576). Dr. Bircher reported that Claimant was able to lift, carry and handle light objects with her left arm but had limited ability to carry with the right arm. Claimant had limitation with dressing and carrying objects with her right upper extremity due to limited range of motion of the right shoulder. (ECF No. 11, Page ID #: 577). Dr. Bircher reported limited range of motion with noted triceps weakness in the right upper extremity. (ECF No. 11, Page ID #: 577).  Dr. Bircher considered Claimant's history of congenital right arm deformity, back pain,

and exam findings and opined that she was able to walk for over an hour; sit for more than one hour; stand for over an hour; and, would have difficulty lifting 20 pounds given her right arm deficit. (ECF No. 11, Page ID #: 578). Dr. Bircher reported that Claimant had limited ability to manipulate with her right hand. (ECF No. 11, Page ID #: 583). The remainder of Dr. Bircher's findings were normal.

The ALJ found Dr. Bircher's opinion not persuasive, explaining that his "assessment that the claimant could lift up to 20 pounds using her right arm does not adequately accommodate impairments that affect both of the claimant's arms." (ECF No. 11, PageID #: 69).

### 2. Rebecca Schroeder, MD – Primary Care Physician

On January 11, 2019, Dr. Schroeder completed a Medical Source Statement. (ECF No. 11, Page ID #: 635). Claimant's symptoms included pain and stiffness of the left hand, right upper extremity weakness, low back pain, right knee pain, off balance, sedation as a side effect of her seizure medication, and difficulty concentrating. Dr. Schroeder opined that, in a work situation, Claimant could occasionally lift less than 10 pounds. (ECF No. 11, Page ID #: 636). Dr. Schroeder opined that Claimant could use her hands for grasping 15 percent of the time; manipulate on the right with 25 percent of the time, zero percent on the left; and never reach with the right upper extremity, 25 percent with the left upper extremity. (ECF No. 11, Page ID #: 637).

On May 10, 2019, Dr. Schroeder completed an updated Medical Source Statement. (ECF No. 11, Page ID #: 638-40). Dr. Schroeder opined that Claimant could never, with her right hand, grasp, turn, or twist objects; perform fine manipulation; reach overhead; and reach in front of her body. (ECF No. 11, PageID #: 640). She further opined that Claimant could, with her left hand,

never grasp, turn or twist objects; perform fine manipulation 25% of the time; and was unlimited in her ability to reach. (ECF No. 11, PageID #: 640).

The ALJ found Dr. Schroeder's opinion "not persuasive", explaining that

> the claimant received upper-extremity treatment incommensurate with Dr. Schroeder's ultimate conclusion that the claimant perform no manipulation or reaching with her right-upper extremity (7F/3 see also 6F/4). Nor is Dr. Schroeder's opinion consistent with the functional capacity evaluation conducted by Ann Harrington, APRN, CNS, FCE that found the claimant capable of sedentary work (9F). Due to such inconsistencies, the undersigned has not found Dr. Schroeder's assessments persuasive.

(ECF No. 11, PageID #: 69).

### 3. State Agency Consultants

On August 1, 2018, state agency consultant William Bolz, M.D. reviewed Claimant's file and completed an RFC assessment. (ECF No. 11, PageID #: 204-206).  Dr. Bolz opined that Claimant could lifting 20 pounds occasionally, 10 pounds frequently. (ECF No. 11, PageID #: 204). Due to congenital deformities in the right hand, Dr. Bolz limited Claimant to frequent push/pulling, handling and fingering. (ECF No. 11, PageID #: 204, 205). Dr. Bolz opined that Claimant could frequently climb, balance, stoop, kneel and crouch but never climb ladders, ropes or scaffolds. (ECF No. 11, PageID #: 204). Claimant could occasionally crawl. (ECF No. 11, PageID #: 204).  Additionally, Claimant should avoid all exposure to hazards. (ECF No. 11, PageID #: 205).

Dr. Bolz' assessment was affirmed by state agency consultant, Elizabeth Das, M.D. on September 7, 2018. (ECF No. 11, PageID #: 219-221).

The ALJ found the state agency consultants' opinions not persuasive but did not make any statement regarding the findings related to Claimant's upper body extremities. (ECF No. 11, PageID #: 69).

## IV.    The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

3.  The claimant has the following severe impairments: Obesity; congenital deformity of the right arm; spine disorders; major joint dysfunction; diabetes mellitus; epilepsy; and left-hand tendonitis (20 CFR 404.1520(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix I (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.  The claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except for the following restrictions: She can lift ten pounds occasionally and less than ten pounds frequently. She can carry ten pounds occasionally and less than ten pounds frequently. She can sit for six hours, stand for two hours and walk for two hours during an eight-hour workday. She can push/pull as much as she can lift and carry. She can operate hand controls frequently and bilaterally. She can perform frequent bilateral fingering. She can perform frequent bilateral handling. She can climb ramps and stairs occasionally but can never climb ladders, rope or scaffolds. She can frequently balance, stoop, kneel or crouch. She can occasionally crawl. She can never work at unprotected heights or near dangerous moving machinery. She can never perform commercial driving.

6.  The claimant is capable of performing past relevant work as a customer service representative. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7.  The claimant has not been under a disability, as defined in the Social Security Act, from November 30, 2015, through the date of this decision (20 CFR 404.1520(f)).

(ECF No. 11, Page ID #: 62-70).

## V. Law & Analysis

### A.  Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g).

"[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

### B.  Standard for Disability

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a).

Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

### C. Discussion

Claimant raises a single issue on appeal: "At step four, the ALJ found that Ms. Lopez is capable of performing her past job as a customer service representative. This finding is unsupported by substantial evidence when the limitations resulting from Ms. Lopez' [sic] severe bilateral hand impairments preclude her from performing the duties required of this job." (ECF No. 15 at 11). Claimant argues that the ALJ arrived at an erroneous RFC by failing to "fully and fairly" evaluate the limitations to her left and right hands. (ECF No. 15 at 15).

Prior to determining that Claimant could perform her past relevant work at step four, the ALJ determined Claimant's RFC. The RFC determination sets out an individual's work-related abilities despite his or her limitations. *See* 20 C.F.R. § 416.945(a). Here, the ALJ determined Claimant's RFC as follows:

> to perform sedentary work as defined in 20 CFR 404.1567(a) except for the following restrictions: She can lift ten pounds occasionally and less than ten pounds frequently. She can carry ten pounds occasionally and less than ten pounds frequently. She can sit for six hours, stand for two hours and walk for two hours during an eight-hour workday. She can push/pull as much as she can lift and carry. She can operate hand controls frequently and bilaterally. She can perform frequent bilateral fingering. She can perform frequent bilateral handling. She can limb ramps and stairs occasionally but can never climb ladders, rope or scaffolds. She can frequently balance, stoop, kneel or crouch. She can occasionally crawl. She can never work at unprotected heights or near dangerous moving machinery. She can never perform commercial driving.

(ECF No. 11, PageID #: 65). When supported by substantial evidence and reasonably drawn

from the record, the Commissioner's factual findings are conclusive – even if this court might reach a different conclusion or if the evidence could have supported a different conclusion. 42 U.S.C. §§ 405(g), 1383(c)(3); *see also Rogers*, 486 F.3d at 241 ("[I]t is not necessary that this court agree with the Commissioner's finding, as long as it is substantially supported in the record."); *Biestek v. Comm'r of Soc. Sec.,* 880 F.3d 778, 783 (6th Cir. 2017) ("It is not our role to try the case *de novo*." (quotation omitted)). This is so because the Commissioner enjoys a "zone of choice" within which to decide cases without being second-guessed by a court. *Mullen*, 800 F.2d at 545.

Claimant argues that the ALJ improperly evaluated Claimant's symptoms when he failed to limit her to occasional handling, feeling, and fingering with both upper extremities. (ECF No. 15 at 15). She argues that the medical evidence supports her testimony regarding the limitations of her bilateral upper extremities. (ECF No. 15 at 13).

The evaluation of a claimant's subjective complaints rests with the ALJ. *See Siterlet v. Sec'y of Health & Human Servs*., 823 F.2d 918, 920 (6th Cir. 1987); *Rogers*, 486 F.3d at 248 (noting that "credibility determinations regarding subjective complaints rest with the ALJ"). In evaluating a claimant's symptoms, the ALJ must look to medical evidence, statements by the claimant, other information provided by medical sources, and any other relevant evidence on the record. 20 C.F.R. § 404.1529(c); SSR 16-3p, 2017 WL 5180304. Beyond medical evidence, SSR 16-3p sets forth seven factors that the ALJ should consider. The ALJ need not analyze all seven factors but should show that she considered the relevant evidence. *See Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005). "[I]f an individual's statements about the intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence and the other evidence, we will determine that the

individual's symptoms are less likely to reduce his or her capacities to perform work-related activities or abilities to function independently, appropriately, and effectively in an age-appropriate manner." SSR 16-3P, 2017 WL 5180304. The ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms ... and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, 2017 WL 5180304; *see also Felisky v. Bowen*, 35 F.2d 1027, 1036 (6th Cir. 1994) ("If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reason for doing so."). Although a reviewing court gives deference to an ALJ's credibility determination, "the ALJ's credibility determination will not be upheld if it is unsupported by the record or insufficiently explained." *Carr v. Comm'r of Soc. Sec.*, No. 3:18CV1639, 2019 WL 2465273, at *10 (N.D. Ohio April 24, 2019) (citing *Rogers*, 486 F.3d at 248-49), report and recommendation adopted by 2019 WL 3752687 (N.D. Ohio Aug. 8, 2019).

With respect to her left hand, and in particular in her middle, ring, and pinky fingers, Claimant testified that she suffered from tendonitis. (ECF No. 11, PageID #: 167-168, 170). Despite attending physical therapy, Claimant testified that the tendonitis prevented her from making a fist and from typing. (ECF No. 11, PageID #: 168). Because she would be unable to type with her left hand (and cannot type with her right hand), she testified that she would not be able to work in her previous job, which required her to type at a fast pace. (ECF No. 11, PageID #: 168). The Commissioner argues that the ALJ adequately explained the basis for finding that Claimant's complaints regarding the severity of her left hand limitations were inconsistent with the record. (ECF No. 16 at 7). This Court agrees.

With respect to Claimant's upper extremities limitations, the ALJ explained:

> Much of the claimant's hearing testimony emphasized the impairments that affect her upper extremities. The claimant

reported having a congenital deformity of the right arm. While she can move her right arm, she reported having a diminished range of motion in this extremity due to stiffness. She also noted that she cannot make a fist with her left hand. She reported performing physical therapy exercises designed to treat carpal tunnel syndrome with her left hand. However, the claimant acknowledged that she can work on puzzles for about an hour at a time. […] (Testimony).

She attributed several functional deficits to her impairments. She noted that cleaning that once took her only about an hour, now takes approximately twice as long because she must take frequent breaks. […] (Testimony).

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

To supplement the evidence of the claimant's impairments, the claimant attended a physical consultative examination on June 2, 2018 by James Bircher, D.O. (3F). […] the claimant exhibited few clinical signs of disabling impairments during the examination.

[…] [Dr. Bircher] noted that the claimant could handle light objects with her dominant left arm but exhibited a diminished capacity to carry with her right arm and exhibited a diminished range of motion in her right shoulder (3F/5). […].

The record establishes the claimant's aforementioned bilateral hand impairments as severe. Medical records describe the claimant as born with "congenital paresis" in her right-upper extremity (1F41). More recently, the claimant developed calcific tendonitis of her left hand (see, e.g., 1F/3 and 2F/45). Accordingly, the claimant has undergone various treatment, especially for her left-hand impairment. She wore a splint at night to treat this condition (see, e.g., 1F/51 and 2F/97). In January 2017, the claimant underwent an injection of the fingers on her left hand (1F/86). She also attended occupational therapy for her left hand in the early months of 2017, (2F/44-63). She also took arthritis medication for this condition (2F/88).

Inconsistent with contention of disability, the claimant acknowledged benefiting from such conservative treatment. As of

15

April 2017, the claimant complained that her dominant left hand grew stiff with use. However, she acknowledged that after attending two months of occupational therapy, she had realized improved functional use of that hand for daily activities, such as turning a doorknob, opening water bottles, dressing and performing hygiene tasks (2F/41-42). The claimant acknowledged that she found occupational therapy effective (2F/67). Later, she attended additional occupational therapy for her left hand in early 2018 (4F/11-32F). By her discharge from this treatment in May 2018, the claimant indicated that she could make a fist and move her wrist without pain (4F/11).

However, the claimant has not exhibited clinical or diagnostic signs consistent with a work- preclusive hand impairment. Impressions from left-hand x-rays performed in December 2016 showed "no significant osseous or articular abnormality" (2F/148). As of January 2017, the claimant rated the pain in her left hand as only a four out of ten (2F/92). Similarly, in February 2017, the claimant rated the pain in her left hand as only a three on a ten-point scale (1F/59). Her occupational therapist observed the claimant carrying a purse in her left hand on March 6, 2017 (2F/49).

Therefore, although the medical evidence does not illustrate that the intensity, persistence or limiting effects of the claimant's upper extremity impairments would prevent her from working, these impairments still warrants some limitations. Specifically, the undersigned has imposed manipulative and reaching restrictions on the claimant.

(ECF No. 11, PageID #: 65-67). The ALJ's decision adequately articulated specific reasons for the weight given to the Claimant's symptoms regarding the limitations of her left hand. The ALJ considered the Claimant's testimony, the objective medical evidence, and the Claimant's treatment for her left-hand tendonitis and found that the record did not support a limitation to the extent claimed by Claimant.

With respect to Claimant's right arm she testified that although she had trouble raising her arm, she was able to move it around. (ECF No. 11, PageID #: 175). She testified that she was unable to use her right hand for typing in her previous employment due to her congenital

condition. (ECF No. 11, PageID #: 179). The ALJ recognized Claimant's right arm impairment as severe, but nonetheless determined that she can operate hand controls, finger, and handle frequently with her right hand. (ECF No. 11, PageID #: 65). Claimant argues that the ALJ did not adequately explain his reasons for finding that Claimant's symptoms did not require additional limitations. (ECF No. 15 at 12). The Commissioner argues that the ALJ adequately acknowledged Claimant's right arm limitation because he "noted that while Plaintiff can move her right arm, she reported having a diminished range of motion in this extremity due to stiffness" and "acknowledged records indicating that Plaintiff was born with congenital paresis (in her right-upper extremity[ )]". (ECF No. 16 at 8). The Commissioner also points out that Claimant did laundry, cleaned her house, prepared meals, and put together puzzles, thus evidencing that her limitations were not as severe as alleged. (ECF No. 16 at 16).

The Court agrees with Claimant that the ALJ did not provide adequate rationale for his finding that Claimant is capable of using her right upper extremity to frequently handle, finger, and operate hand controls. Although the ALJ noted that medical records establish that Claimant was born with "congenital paresis" in her right upper extremity, the remainder of his explanation discusses Claimant's left upper extremity. (ECF No. 11, PageID #: 65-67). The ALJ fails to explain how the objective evidence is inconsistent with Claimant's allegation of inability to use her right upper extremity. Accordingly, the ALJ's explanation for his conclusion that Claimant can frequently handle, finger, and feel with her right upper extremity is not sufficient.

Moreover, the decision as a whole does not provide sufficient support for the ALJ's conclusion as it fails to adequately discuss any evidence that contradicts Claimant's allegations of inability to operate hand controls, finger, and handle frequently with her right hand. The objective evidence supports Claimant's allegations of inability to use her right upper extremity.

17

Claimant's neurologist consistently observed paresis in the right arm with abnormal coordination in the right upper extremity. (ECF No. 11, PageID #: 397-398, 451, 506). Dr. Cheng, from the Department of Orthopedics, noted that Claimant had a birth defect of her right arm – it was shorter than her left arm and did not function well. (ECF No. 11, PageID #: 488). The consultative examiner, Dr. Bircher found rhizomelia (limb shortening) of the right arm with a limited range of motion and triceps weakness of the right upper extremity. (ECF No. 11, PageID #: 576, 578). Dr. Bircher also observed that Claimant had limited ability to manipulate with her right hand. (ECF No. 11, PageID #: 583).  The Commissioner's reliance on Claimant's ability to do laundry, clean her house, prepare meals, and put together puzzles does not accurately reflect Claimant's ability to perform these tasks with her right hand. The evidence supports that because of her congenital defect to her right arm, she has learned to perform such tasks primarily using her left hand. (*See* ECF No. 11, PageID #: 426). Additionally, the Claimant specifically testified that she worked on puzzles as a means to exercise her left hand. (*See* ECF No. 11, PageID #: 174).

Finally, the opinion of Claimant's primary care physician supports Claimant's limitations regarding her right hand. On January 11, 2019, Claimant's primary care physician, Dr. Schroeder, opined that she could grasp, turn, or twist objects with her right hand 15% of the time, perform fine manipulation with her right hand 25% of the time, and never reach overhead and in front of her body with her right hand. (ECF No. 11, PageID #: 637).  On May 10, 2019, Dr. Schroeder opined that Claimant could never, with her right hand, grasp, turn, or twist objects; perform fine manipulation; reach overhead; and reach in front of her body. (ECF No. 11, PageID #: 640). The ALJ found Dr. Schroeder's opinion "not persuasive", explaining that

> the claimant received upper-extremity treatment incommensurate
> with Dr. Schroeder's ultimate conclusion that the claimant perform

18

no manipulation or reaching with her right-upper extremity (7F/3 see also 6F/4). Nor is Dr. Schroeder's opinion consistent with the functional capacity evaluation conducted by Ann Harrington, APRN, CNS, FCE that found the claimant capable of sedentary work (9F). Due to such inconsistencies, the undersigned has not found Dr. Schroeder's assessments persuasive.

(ECF No. 11, PageID #: 69).

For claims filed after March 27, 2017, such as here, an ALJ must "articulate how [she] considered the medical opinions and prior administrative medical findings" in adjudicating a claim. 20 C.F.R. § 404.1520c(a). In doing so, the ALJ is required to explain how she considered the supportability and consistency of a source's medical opinion(s), but generally is not required to discuss other factors. 20 C.F.R. § 404.1520c(b)(2). Medical source opinions are evaluated using the factors listed in 20 C.F.R. § 404.1520c(c). The factors include: supportability; consistency; the source's relationship with the claimant; the source's specialized area of practice, if any; and "other factors that tend to support or contradict a medical opinion." 20 C.F.R. §§ 404.1520c(c), 404. 1520c(b)(2) ("The factors of supportability [ ] and consistency [ ] are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions ....").

The ALJ's explanation here does not adequately explain the basis for discounting Dr. Schroeder's opinion regarding the limitations to Claimant's right hand. The records cited by the ALJ do not support his conclusion. The ALJ does not specify what "upper-extremity treatment" Claimant received with respect to her right arm and a review of the record evidence only discusses physical therapy to rehabilitate Claimant's left hand. Additionally, Exhibit 9F does not

provide the intended support to the ALJ's conclusion.[2] With respect to Claimant's right arm, Nurse Harrington observed that Claimant suffers from paresis and short length (ECF No. 11, Page ID #: 751, 755) with limited range of motion (ECF No. 11, Page ID #: 754-55). The examiner stated she "believed" Claimant was capable of sedentary work but refused to complete any functional assessment paperwork until establishing a relationship with Claimant. (ECF No. 11, Page ID #: 754-55). Notably, however, Nurse Harrington's examination of Claimant reflected little regarding her right arm and focused on examinations of her back and left hand. As a whole, the ALJ's decision does not discuss Claimant's limitation with her right hand, and the medical records he relied upon do not provide the intended support.

In short, the ALJ failed to articulate how he evaluated Claimant's credibility, including complaints of inability to use her right upper extremity, and the ALJ's decision, therefore, must be reversed and the case remanded. *See Carr*, 2019 WL 2465273, at *11 (citing SSR 16-3p, 2017 WL 5180304, at *4 (The ALJ's credibility determination must be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms."); *Schroer v. Comm'r of Soc. Sec.*, 2018 WL 3145846, at *5 (N.D. Ohio June 12, 2018) (remanding because the ALJ's decision failed to meet the articulation requirements of SSR 16-3p)).

The ALJ's error is not harmless. Claimant's counsel asked the vocational expert whether any jobs would be available if the ALJ's hypothetical was altered to include no handling, fingering, or feeling with the right upper extremity and only occasional handling and fingering with the left upper extremity. (ECF No. 11, PageID #: 191). The vocational expert replied that no

---

[2] Exhibit 9F is a 96-page exhibit that includes medical records dated 9/17/2018 to 5/10/2019 from MetroHealth. (ECF No. 11, PageID #: 695-790).

jobs would be available with such limitations. When Claimant's counsel altered it to occasional handling, fingering, or feeling with both upper extremities, the vocational expert testified that only one job would be available. (ECF No. 11, Page ID #: 191-192). No hypotheticals were asked limiting the individual to either occasional or no handling, fingering, or feeling with the right upper extremity and frequent handling and fingering with the left upper extremity.

The reasons given for finding Claimant's subjective complaints not credible were insufficient to constitute substantial evidence. Accordingly, since the ALJ's assessment of Claimant's RFC is driven by this consideration of "all of the relevant medical and other evidence," 20 C.F.R. § 416.945(a)(3), his RFC finding and its use in concluding Claimant could return to her past relevant work are similarly flawed. *See Rogers*, 486 F.3d at 250. Additionally, since the ALJ's evaluation ended at step four, he did not consider the fifth and final step of the sequence; that is, whether other jobs in significant numbers exist in the national economy that Claimant could perform given her RFC and considering relevant vocational factors. *See* 20 C.F.R. §§ 416.920(a)(4)(v) and 416.920(g).

Accordingly, remand is necessary for the ALJ to examine whether Claimant would be able to perform her past relevant work given the limitations to her upper body extremities, and, if not, whether jobs exist that Claimant could perform given her RFC and relevant vocational factors. The matter should be remanded to the Commissioner for further proceedings consistent with this opinion.

## VI. Recommendation

Based on the foregoing, it is RECOMMENDED that the Court REVERSE the Commissioner of Social Security's nondisability finding and REMAND this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

Dated: 5/17/2021

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE

---

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F. 3d 520, 530-31 (6th Cir. 2019).